The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. You can be seated, Mr. Zuckerman, whenever you're ready. Thank you, Your Honor. May it please the Court, my name is Joel Zuckerman, and I represent a woman by the name of Brilliant Semenova. And I may at times refer to her as Brillie or the Appellant. Brillie is a young woman who's 25 years old. She was born and raised in Owings Mills, Maryland, and she's the daughter of Russian immigrants. She was born with cerebral palsy, which impacts her ability to walk independently without the use of a mobility device. She uses a large, oversized walker, not one that is out in front of her. She actually grips it by the side and it wraps around her. The bar wraps around and she sort of drags it and it has some wheels behind it. So it's a little bigger than the walker that you may see that's more commonly used. After she graduated from high school, she wanted to continue her education at Baltimore County Community College. And with that, she had to start using public transportation more frequently. And she relied on public transportation to get her to or from her classes. And over time, the ability of her to get to her classes on time was impacted by the fact that the buses, the bus drivers on occasion, more than once, would either drive by and not pick her up, would not lower the ramp for her so that she could get onto the bus because she cannot climb steps. And they would accuse her of faking her disability. And this went on for several years before this lawsuit was actually initiated. She first tried to have the claim reconciled through the administrative procedures that are provided under Maryland's Title 20 for disability discrimination in a public accommodation, by a place of public accommodation, in this case the bus service. And that was, there was no resolution, satisfactory resolution, in fact, no resolution at all as a result of that. And then she filed her lawsuit, and the complaint is fairly straightforward. She was ultimately forced to withdraw from class in the summer of 2012 after it just, she wasn't able to get to class on time, and she wasn't able to matriculate. We filed a lawsuit. There was a motion to dismiss filed by MTA, and Judge Motz, in really a memo to counsel, for the first time ever, applied a two-year statute of limitations to an ADA-type claim, not to an ADA and Rehabilitation Act claim in the state of Maryland. And the question for this court is. . . If we do find that a two-year statute of limitations is applicable, would you be out of time, or could you still, do you have an argument that you fit even within a two-year statute? I. . . We could likely amend, because I understand what the court's saying. Did something happen? It wasn't the most artfully drawn complaint, but I can. . . The complaint does allege that the activity continued through. . . The end of 2012. And it wasn't a complaint. It doesn't say the end of 2012. Through 2012, sorry. Through 2012. Through. Yes, and it's still going on today. This is probably not the end of it, whatever happens today. But I don't. . . The 2007 amendments to the Maryland Anti-Discrimination Claim didn't change. . . How would it not be the end of it if we affirm the district court's decision that you were out of time? Well, it would be the end of this case. You would be fined.  You would be fined. But you're saying you have another. . . You could bring. . . Yes. You have incidents since then. You could bring another action. Yes, but obviously that's not. . . I mean, Ms. Semenova's. . . These cases are usually taken pro bono initially. But regardless, I think the three-year statute of limitations applies in any event. I don't think that the two. . . That statute of limitations is not the most analogous. Absolutely. How do you distinguish the argument about the Virginia and North Carolina cases? Because the Virginia and North Carolina cases, they provide a state law claim for violations of their anti-discrimination statutes for against owners of places of public accommodation. So they provide. . . Maryland statute does not allow you to file a private right of action in a state court or in any court for violations of Maryland law for claims that are most analogous to Title II and III ADA claims and Rehabilitation Act claims that allege discrimination by places of public accommodation. That's the distinction. And, in fact, the issue before this court, I think, is even more narrow than what was written on the form this morning, is whether a two- or three-year statute of limitation applies to ADA claims. I think it's in Maryland. I think the question is whether a two- or three-year statute of limitations applies to Title II and Title III ADA claims, because Title I ADA claims are employment claims, and they're subject to the standards of the EEOC. You have to first file an administrative action, and then you have to wait 180 days before you can file a lawsuit, and then you have whatever period of time after the alleged event occurred to file suit. And in Maryland, when Maryland opened the courthouse doors, that was the phrase that was used in MTA's brief, they did open the courthouse doors to victims of employment discrimination and victims of fair housing discrimination. They did not open the courtroom doors to clients such as mine who suffer discrimination by owners or operators of places of public accommodation. And that is a distinction that I think was missed below, is that nothing has changed since the Kohler case was decided in 1995 by the lower court, by the district court, where the only remedy under Maryland state law for somebody in my client's position is still an administrative action that has a six-month statute of limitation. So whatever was in place in 1995 remains the remedies that are available to my client as we stand here today under Maryland law. And that's the distinction between the Virginia statute and the North Carolina statute, which actually state that they are intentionally patterned after the federal acts. And one of the other issues that was raised by MTA in their brief was there would be an anomalous situation if you had a different statute of limitations for different claims under the act. Well, even in a society without a name, they applied two separate limitations. There was a one-year limitation for the ADA claims, and there was a two-year limitation because the federal statute provides a two-year statute of limitation under the Fair Housing Act. So the question of will it cause confusion? No. I mean, these are different causes of action, and employment action is much different than what my client suffered, than the discrimination my client suffered. And I will also point out that an unreported opinion by this court in 2013 reaffirmed, even though it was per curiam, but it reaffirmed that a three-year statute of limitations applies to ADA claims. And then Judge Chazanow at the district court in 2014 reached the same conclusion. And, again, this was the first time that this has ever been, a two-year statute of limitations has ever been applied to a case like such a crime. When was the two-year statute of limitations passed by? When was a two-year statute of limitations applicable to the three counties? When was that passed? I'm sorry. When was the statute passed, 20-1202? 2007. That was the amendments. Again, for years, Maryland had only provided for administrative actions for violations of their anti-discrimination statutes. And then the legislature eventually, as I'll use the phrase again because I think it's very apt, opened the courthouse doors to people who suffered discrimination in housing and employment, but kept the courtroom doors closed to somebody like my client and only provides an administrative action. And also the administrative action, the remedies, the goal of an administrative action under the statute for somebody like my client is conciliation. She can't get compensatory damages like the federal law provides. You would hope there would be, the conciliation process would result in the nature of injunctive relief where, moving forward, the alleged violator would make the changes and make the facility accessible. But the question really becomes for this, I think the question for this court is how important are the remedies? Because certainly we don't deny that the Maryland statute, as far as the discrimination that it prohibits, is similar to what's prohibited under the ADA. But the rights and remedies for somebody like my client are extremely limited. And the most analogous analysis fails when you try to apply the two-year limitation to somebody like my client because she does not have the same rights that somebody who would have an employment claim or a fair housing claim under Maryland law. And certainly you have to acknowledge that the Maryland legislature was aware of what it was doing when it kept the remedies, when it limited the sole remedy to an administrative action for clients such as mine, when it created the statute. And they could have, I assume, set a two-year statute of limitation for any civil action filed under the, I forget which title it is right now, but the title that prohibits discrimination by places of public accommodation. But there isn't. In fact, the public accommodation discrimination provisions in the Maryland statute, that's the shortest subtitle. And when you go and look at the remedies at the end, there are no remedies. You have to go to Maryland Human Relations Commission's website to find out that you have the right to file a claim with their administrative claim. So it is plaintiff's view or appellant's view that the statute of limitations that has been in place for years for Title II and Title III claims continues to be three years in Maryland. And that is based on the court's precedent. And in fact, I'd also just highlight one other case, which was not cited in my brief, but which was relied upon in Kohler v. Shinaski, which was the McNutt case, which was McNutt v. Duke Precision Dental and Orthodontic Lab, 698 F. Second, 676 Fourth Circuit, 1983, where it lays out what the purpose of the administrative process is in Maryland. And that hasn't changed. It hasn't changed since 1983. It didn't change in 1995 when Kohler relied on it, and it didn't change with the amendments. And it's still the same scheme here. And to apply the two-year statute of limitation would be anomalous to the case law and would be without precedent. Thank you. Ms. Sweeney. May it please the Court, I'm Assistant Attorney General Julie Sweeney, appearing on behalf of the Maryland Transit Administration. I ask that the Court affirm the decision of the District Court dismissing this case on the basis of timeliness. The case below was brought solely based on Title II of the ADA, which does not have a statute of limitations when it was passed in July of 1990. So under 42 U.S.C. 1988 and Wilson v. Garcia, the District Court correctly, properly borrowed and applied the most appropriate or closely analogous statute of limitation found in Maryland law to this suit. MTA contends that the District Court correctly determined that the two-year statute of limitations of Title 20, as amended in 2007 and also in 2009, is the most analogous and appropriate Maryland statute. Like the ADA, Title 20 prohibits disability discrimination in public accommodations, employment, in addition to housing, leasing, and licensing. The two-year statute of limitation appears repeatedly throughout Title 20, making it clear that it is the intent of Maryland to limit the time for bringing these types of claims to two years. A decision to adopt... Is that simply because the two things that are permitted under Title 20 are discrimination and therefore because the appellate in this case is discriminated against, you just assume that it causes discrimination in Title 20, then it should apply to this case. Is that your logic? The logic is actually Wilson v. Garcia. And the logic in that case is, as the Supreme Court directed us, which is followed in the Society Without a Name, Wolsky, and also the McCullough cases, the rationale is under 1988 that you pick the most analogous and that the policies behind that are very important. So could appellant have brought her claim under the Anti-Discrimination Act? Your Honor, factually, with regard to the accommodations in this case, she could not have. However... How could it possibly be the most analogous? If I might complete my answer, Your Honor, if there are three large counties in Maryland where if it had occurred in Montgomery County, Prince George's County, or Howard County, the two-year statute of limitation would have applied and she could have brought a public accommodations claim along with the ADA claim in this matter. So the state law does actually allow for those actions to come through. But only in those three counties? That is correct. Now, to answer the second question that Your Honor posed, I think that it's very important to study the McCullough case. The McCullough case, I think, really controls the Court's decision here because the question is the most analogous. Not exactly the same, but the most analogous. And it can be that there are distinctions between the statutes that are under consideration. And there are differences. We acknowledge that there are differences between Title 20 and the ADA and the Rehab Act to which this will apply. And the distinctions in the McCullough case were significant. There was limitations on damages. The accommodations was placed on the plaintiffs instead. Actually, if you brought a federal action under the North Carolina statute, you couldn't bring a state action at all. So there were significant differences in the McCullough action. It didn't extend to publicly funded places like Maryland's statute does. So really what McCullough directs is that you must look at the entirety of the statute, the entirety of Title 20, in other words. So that you must look at the employment discrimination, which really proportionately is about 75% of the cases that the courts see, as opposed to something like the public accommodations, not that they're less significant, but they are less proportionate. They're about 9% or so. So when you look at that and you apply the judgment of the court, you have to look at the entire Title 20 statute and how that is going to apply across the board to employment discrimination cases brought under the Rehab Act, to the public accommodations, and to the other actions. And as indicated in the briefs, the Title 20 has changed significantly. And therefore, the court must take the law as it finds it at the time of the case. 49B no longer exists. It no longer exists in Maryland. In 2007, it became Title 20. It was amended in 2009 to significantly alter and mirror the ADA, as was the case in the North Carolina statute, which also did not say that it was mirroring the ADA. So that is not a requirement, as this court has acknowledged in the prior cases. It's not necessary that the statute say that it's following the ADA. But the policy note on the amendments to the 2000 changes to the Disability Title 20 Act indicate that the modifications were made to be consistent with the ADA. So in other words, individuals now in employment discrimination cases and housing cases can get a jury trial. They can get damages. They can get compensatory damages. They can get attorney's fees. All those things have changed. Maryland has changed its statute. And this is a case of first impression in analyzing this statute. And with respect to the court, with regard to the gendarme case, that case did not analyze the question that is before the court. It assumed that the statute was three years. It was also an unpublished decision, which the court can decide how much precedent it wants to put on that, although that is dependent upon the analysis that is included in the case before it. And as noted, the gendarme case simply cites to the prior case of Innis, which did no analysis, and also the cases of Kohler and other cases that predate the amendments that took place in 2007 and 2009. So I think going back to Wilson and Garcia, it's important to understand the policy that's at issue here. And Wilson v. Garcia, the United States Court, talks about the importance of certainty and uniformity and avoiding unnecessary litigation. And I think this court has the opportunity to do that because I think in adopting the two-year statute of limitation, it will be clear that between the federal causes of action and the state causes of action, the statute of limitation will be two years. It will be easy for the courts to apply. It will be two years. If we find that the statute of limitation is two years, what about the fact that the complaint alleges that the discrimination continued through 2012 and the complaint was filed arguably within two years? Yes, Your Honor. Those arguments were raised for the first time on appeal, so it would be our position that those arguments were waived by the appellant. What if they were not? Okay. If they were not, then they are contradicted by the facts of the complaint and contradicted by the charge that was filed with the Maryland Commission on Civil Rights. Turning to the complaint that was filed on October 30, 2014, the statute of limitation is going back to two years, October 30, 2012. The complaint states, and this is at the joint appendix, page 7, in paragraph 10, it states, at all times relevant to the complaint, the plaintiff was a student at CCBC. She stopped being a student in the summer of 2012. That is a clear statement of fact of the time that the events in question took place. Furthermore, that's reiterated in paragraph 15 of the complaint found at JA 8, where she states that the events occurred during her enrollment at CCBC, which we know, again, ended in the summer of 2012. Furthermore, the Maryland Commission charge, which is referenced in the complaint, was not opposed in terms of the authenticity, states under oath, penalties of perjury, that the last event occurred on August 7, 2012. Now, if it had been signed, that complaint had been signed perhaps on August 8 of 2012, we could understand why the last event wouldn't reference something that happened maybe between August and after, sorry, after August, after October 30th of 2012. However, that charge was signed on February 22nd, 2013. So if anything had happened since August 7th of 2012, it should have been and would have been referenced in that charge. And that charge was an integral part of the complaint. It was referenced by the plaintiff below. It was added on to the motion to dismiss, and under this court's precedent, it may be considered on a motion to dismiss, and properly was so. So we would contend that the specific events referenced in the complaint all took place prior to October 30th of 2012. And in addition, the statements made specifically by the plaintiff below were at all times relevant. The plaintiff was a student at CCBC, and that ended in August of 2012. Thank you. Any other questions? What effect do you think we should give the fact that Maryland limited the application of that statute of limitations to just three counties? I mean, I'm sure the other side is going to argue, well, if I was in one of those three counties, I wouldn't have as good an argument, but I'm not. And the legislature decided not to put Baltimore County. Yes. Again, I think that... How do we handle that? Yeah. Again, I think the answer lies in McCullough, and also in Wilson v. Garcia. In Wilson-Garcia, that's Supreme Court, and the Supreme Court says there must be uniformity, certainty, and avoid unnecessary litigation. So I think if you set up that some claims are going to, under Title 20, are going to get two years for the ADA Title II, some claims are going to get two years, and some claims are going to get three years, I don't think that serves the purposes of Wilson v. Garcia, uniformity, certainty, and avoidance of litigation. I think you're going to have more cases before this Court. But you're going to say that the fact it's limited to three counties is irrelevant. I am going to say it, because I think that's a minor part of the statute. And if you look at McCullough, there were significant differences between the North Carolina statute and the ADA Rehab Act that was under consideration there. There were significant differences. But as the Court said, the fact that there are differences begs the question about what is most analogous. And those differences didn't magically tip, those were the words of the Court, didn't magically tip the balance of similarities or the most analogous to it being a catch-all statute of limitations, which really has nothing to do with disability discrimination at all. Do you have any more questions? Okay, thank you, Ms. Wheeler. Thank you, Your Honors. Mr. Zuckerman, you have some time remaining. Thank you. Thank you. A couple of points that I wanted to address. With respect to the counties, that's county law. That's not state law. The language in the cases is most analogous state law. These are county laws, and with respect to the limitations period, the limitations period is not the ADA. It's not the Rehab Act. What the law that has to be applied to is the most analogous state law, and these are county laws that they're referring to. With respect to the changes in Title 20, that 49B no longer exists, the same rights and remedies that were in 49B were imported into Title 20. Now, the definition of disability may have been expanded and may have expanded the people that may be protected under the statute, but, again, it's not simply the conduct that the law is designed to prevent or prohibit. That's not enough. You have to look at the rights and remedies, and my opposing counsel, she acknowledged that you only have the right to employment and housing claims under Maryland statute. You still do not have the robust rights and remedies that are available under the federal law under Maryland's Title 20 when it comes to disability discrimination by places of public accommodation. Can you give me any reason why the Maryland legislature, if they wanted to expand the statute of limitations, would make it different for other counties than these three? I'm not sure. I looked at other counties. I'm not sure why. I think that other counties may not provide for a private right of action under their county statutes. They may simply rely on state statutes. I know I looked at Frederick County in Maryland, and they did not have a private right of action under their county law. So is it true that these are the only three counties that have recognized or created private causes of action? I'm not certain about that, but I would imagine, again, that the legislature was aware of what the statutes were throughout the state with respect to the counties and that they did that. What is the statute of limitations under those county laws? What's the statute of limitations? I'm not sure if the statute of limitations, if they even have one, it may be that they rely on Title 20 for that. Again, I apologize. I don't have that at my fingertips. With respect to the North Carolina statute, and that was at issue in McCullough, it's important to note that under their remedies section, it's 168A-11, which is civil action. If you look at section C, if a plaintiff has a case pending in the state court under state law, and then they file in federal court under federal law, the state court loses its jurisdiction. There's a preemption statute there, where if you file under federal law, then that's the only place you can file. So it's clear that North Carolina viewed its statute very much like the federal acts. Again, I come back to the rights and remedies under Title 20 that are not available to my client, that are available to other people who suffer discrimination in other areas. Finally, with respect to policy, the importance of certainty and uniformity in litigation, again, I point out that there are time limits contained within the ADA itself when you file an employment claim with respect to the EEOC. Sometimes you have to file an administrative action before you have a right to file a lawsuit. Title II and Title III do not have administrative actions. So you can simply experience discrimination and the next day file your lawsuit. Not so in an employment case. So the fact that the courts may not be able to distinguish between the various statute of limitations, I don't think that's what the court had in mind in Wilson. I think that what the court had in mind in Wilson was, let's focus on not only the discrimination that we're trying to protect people from, but also the rights and remedies. And that's what's most important because Maryland statute, again, they have always applied the statute of limitations that apply to tort claims because that's what they believe that a civil rights action is. It's a violation of your rights and it's a civil injury. And for whatever reason, Maryland legislature felt that they were not going to afford somebody like my client the right to file a lawsuit under Maryland law. The only place you can file a lawsuit is in federal law. And, in fact, when you think of the remedy, it doesn't even really recognize Maryland law. I don't think it recognizes that it's a tort because it's not entitled to damages under Maryland law. So the most analogous state statute of limitations to this case is three-year statute of limitations that applies to tort claims and that has been applied since the ADA was enacted back in 1990. Thank you. Thank you, Mr. Zuckerman. All right, we'll come down and recouncil and then go into our next case.
judges: William B. Traxler, Jr., Henry F. Floyd, Stephanie D. Thacker